c

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## ALEXANDRIA DIVISION

| | |
|---|---|
| NICHOLAS QUEEN, Plaintiff | CIVIL DOCKET NO. 1:19-CV-01576 |
| VERSUS | JUDGE DRELL |
| UNITED STATES, *ET AL.*, Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

Before the Court are the following motions:  (1) a Motion for Summary Judgment (ECF No. 64) filed by *pro se* Plaintiff Nicholas Queen ("Queen"); and (2) a Cross-Motion for Summary Judgment (ECF No. 75) filed by Defendant the United States of America (the "Government").  Queen was an inmate in the custody of the Federal Bureau of Prisons ("BOP"), incarcerated at the United States Penitentiary ("USP") in Pollock, Louisiana.[1] He seeks summary judgment as to the Government's affirmative defenses, arguing the Government failed to provide any evidence in support of its defenses, and that there is "no material fact that could allow the Court to decide this case" against him.  ECF No. 64 at 5.[2]

---

[1] Queen is no longer in BOP custody.  ECF No. 51.

[2] Queen's motion is captioned as a "Motion for Summary Judgment" and "Affidavit."  ECF No. 64.  However, it consists of a verified Affidavit, responding to and discounting the Government's affirmative defenses.  ECF No. 64.

On cross-motion, the Government seeks dismissal of all claims, arguing there is no genuine dispute that BOP employees' actions complied with BOP policy, and that Queen did not suffer the alleged injuries.  ECF No. 75-1 at 1.

Because Queen's Motion for Summary Judgment (ECF No. 64) is procedurally defective and fails to establish there is no genuine issue of material fact entitling him to summary judgment, Queen's motion (ECF No. 64) should be DENIED WITHOUT PREJUDICE.

The Government's Motion for Summary Judgment (ECF No. 75) should be GRANTED IN PART and DENIED IN PART.  Because the Government failed to establish no genuine issue of material fact as to whether Queen was guilty of assault against BOP officers on January 3, 2019, and as to whether his conduct necessitated immediate use of force, the Government's motion (ECF No. 75) should be DENIED IN PART as to summary judgment that BOP employees complied with BOP policy concerning the use of force against Queen.  However, because Queen's alleged injuries are considered *de minimis*, the Government's motion (ECF No. 75) should be GRANTED IN PART as to summary judgment of all claims on that basis.

## I.   Background

Queen filed suit under the Federal Tort Claims Act ("FTCA"), 18 U.S.C. § 2671, alleging he is entitled to relief for officers' violations of BOP policy and excessive use of force at the USP in Pollock, Louisiana ("USP-Pollock").  ECF Nos. 1, 9, 34.  The Government answered the Complaint (ECF No. 9), as amended (ECF No. 34),

asserting various affirmative defenses.  ECF No. 57.[3]  Queen's sole remaining claim is his FTCA assault claim against the Government.  ECF Nos. 54, 55.

Queen alleges that, on January 3, 2019, correctional officer J. Lyons ("Lyons") made a call for a medical emergency while Queen was sleeping in a chair in his cell. ECF No. 9 at 3.  Officer Steve Coggins ("Coggins") and two unknown officers arrived. *Id.* Queen informed all of the officers that he was "alright."  *Id.*

Queen alleges that the officer then hit him in the face, pushed his head against the wall, and dragged him across the floor while twisting his arm underneath him. *Id.*  Queen also alleges that the officers choked him and jumped on him.  *Id.*  After officers restrained him, Queen claims they dragged him to the medical department. *Id.*  Queen contends that, as a result, his lower back, right hip, right arm, shoulders, and right leg are "in constant pain."  ECF No. 9-1 at 10.  Queen seeks compensatory damages.

Queen now seeks summary judgment on the Government's affirmative defenses.  ECF No. 64.[4]  Queen's motion was, in substance, a verified affidavit.  ECF No. 64.  He attached the January 3, 2019 Incident Report (ECF No. 64-1 at 1) and a February 23, 2021 Medical Report Form (ECF No. 64-1 at 2).  Queen failed to include a Statement of Undisputed Material Facts or brief.

---

[3] The Government is the only remaining Defendant.  ECF Nos. 54, 55.

[4] The Court has once already denied a summary judgment motion filed by Queen because he failed to support it with any summary judgment evidence or identify portions of the record establishing the absence of a genuine issue of material fact.  ECF Nos. 54, 55.

The Government responds with a Cross-Motion for Summary Judgment (ECF No. 75), seeking dismissal of all claims. The Government submits the following: (1) a Statement of Undisputed Material Facts (ECF Nos. 77, 78); (2) the Declaration of Coggins (ECF Nos. 75-2, 78-1); and (3) a copy of BOP's Policy on the Use of Force and Application of Restraints (ECF No. 75-3).

Queen opposes. ECF No. 82. And he supplemented his Opposition with his Affidavit (ECF No. 86) and correspondence from the United States Department of Justice ("DOJ") (ECF No. 91-1).

## II.   Law and Analysis

### A.   A movant is entitled to judgment as a matter of law where there is no genuine dispute as to any material fact.

Under Rule 56 of the Federal Rules of Civil Procedure, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Paragraph (e) of Rule 56 also provides the following:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or
> (4) issue any other appropriate order.[5]

---

[5] Local rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

4

"A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Hefren v. McDermott, Inc.*, 820 F.3d 767, 771 (5th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In deciding a motion for summary judgment, a court must construe all facts and draw all inferences in the light most favorable to the non-movant. *See Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). However, a mere scintilla of evidence is insufficient to defeat a motion for summary judgment. *See Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir. 1999).

### B.    Queen's Motion for Summary Judgment (ECF No. 64) fails to establish there is no genuine issue of material fact entitling him to summary judgment.

Queen's motion was in the form of an affidavit. It was not accompanied by a memorandum in support or statement of undisputed material facts. Queen's affidavit responds to the Government's twenty affirmative defenses asserted in its "Affirmative Defenses and Answer to Complaint and Amended Complaint" (ECF No. 57). It appears that Queen is seeking summary judgment as to each of the Government's affirmative defenses.[6]  ECF No. 64 at 5. He argues that the Government failed to provide him with evidence in discovery in support of their defenses and "can not now submit any documentation in support of its defense[sic]." ECF No. 63 at 5.

Queen attaches the January 3, 2019 Incident Report, concerning the allegations in this action. ECF No. 64-1 at 1. He references the incident report in his

---

[6] Prior to filing this motion, Queen sought to strike the Government's affirmative defenses. The Court has since denied this request.  ECF Nos. 60, 64.

affidavit, arguing the Government's third defense "is overcome by Officers who falsified the Plaintiff assaulted an officer." ECF No. 64 at 3. He also attaches a February 23, 2021 Medical Report Form (ECF No. 64-1 at 2) from the Baltimore Department of Social Services,[7] in support of his claim of pain, suffering, physical injuries, and emotional distress. ECF No. 64 at 2. The form states Queen shows a diagnosis of chronic low back pain, hypertension, and right hip pain. ECF No. 64-1 at 2. In a questionnaire format, it reflects Dr. Max Romero's ("Dr. Romero's") assessment that Queen suffers from a "physical/mental/emotional impairment," which is severe enough to prevent him from working, participating in work, training, or education activity. *Id.* Dr. Romero noted Queen's impairment is expected to last from March 15, 2021 to March 15, 2022. ECF No. 64-1 at 3.

Under Local Rule 56.1, "[e]very motion for summary judgment shall be accompanied by a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried." Queen is proceeding *pro se*, and the Court must afford him leniency in filings. *Perez v. United States*, 312 F.3d 191, 194-95 (5th Cir. 2002). However, *pro se* litigants must still comply with the same rules of procedure governing other litigants and make arguments capable of withstanding summary judgment. *Thorn v. McGary*, 684 Fed.Appx. 430, 433 (5th Cir. 2017); *see also Longoria v. Dretke*, 507 F.3d 898, 901 (5th Cir. 2007). Queen is not excused from complying with the Rules of Civil

---

[7] It appears Queen received an assessment through "Health Care for the Homeless" in Baltimore, Maryland after his release from prison, in determining his eligibility for Maryland's Temporary Disability Assistance Program ("TDAP"). ECF No. 64-1 at 2-3.

Procedure or the Court's local rules. *See Whiting v. Kelly*, 255 Fed.Appx. 896, 899-900 (5th Cir. 2007) ("[P]articularized additional notice of the potential consequences of a summary judgment motion and the right to submit opposing affidavits need not be afforded a *pro se* litigant. The notice afforded by the Rules of Civil Procedure and the local rules [is] . . . sufficient.").

Further, the Court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). And, "an affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

Here, Queen did not provide a Statement of Undisputed Material Facts. Queen's "affidavit" states mostly conclusory assertions and argument in response to Defendants' affirmative defenses. ECF No. 64. And Queen's Complaint (ECF No. 1), as amended (ECF Nos. 9, 34), is unverified.[8] The Court has afforded Queen ample and extended leniency in his filings, and has at least once appraised Queen of the standards governing summary judgment motions. Notwithstanding that and more, Queen's filings again fall well short of the marks set by Rule 56.

---

[8] An unverified complaint does not constitute competent summary judgment evidence. *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994).

Because Queen's motion fails to establish material facts not in dispute that entitle him to summary judgment, his motion (ECF No. 64) should be denied without prejudice.[9]

### C.    Queen must establish excessive force to prevail on his FTCA assault claim.[10]

The FTCA's law enforcement proviso, 28 U.S.C. § 2680(h), extends the waiver of the Government's sovereign immunity to claims arising out of six intentional torts, including assault and battery, that are based on the "acts or omissions" of an "investigative or law enforcement officer," . . . occurring while the officer is "acting within the scope of his office or employment." *Millbrook v. United States*, 569 U.S. 50 (2013). BOP officials are "law enforcement officers" within the meaning of the FTCA. *Dickson v. United States*, 11 F.4th 308 (5th Cir. 2021).

Under the FTCA, the Court must determine liability in accordance with the substantive tort law of the state "where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Under Louisiana law, the tort of "[a]ssault is an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery." La. R.S. 14:36. "Battery is the intentional use of force or violence upon

---

[9] However, the Court still addresses his brief and evidence in its consideration of the Government's summary judgment motion.

[10] The Court recognizes the awkward posture of this case. Procedurally, despite his use of the terms "force" and "excessive force," the Court allowed Queen's action to proceed under the FTCA as he did not allege constitutional claims and his claims were construed as alleging assault by law enforcement officers under the FTCA, which is excepted from sovereign immunity. *See* ECF No. 54. However, as to the merits, the Court must look to Louisiana law on assault by a law enforcement officer, which requires a showing of unreasonable or excessive force. *See Kyle v. City of New Orleans*, 353 So.2d 969, 972 (La. 1977).

the person of another, or the intentional administration of a poison or other noxious liquid or substance to another." La. R.S. 14:33.

When raised against a law enforcement officer acting in the course of employment, the torts of assault and battery require a showing that the law enforcement officer acted with unreasonable or excessive force. *Harris v. City of Bastrop*, 2016 WL 3948107, at *9 (W.D. La. Jul. 19, 2016).[11] "Whether the force used is reasonable depends upon the totality of the facts and circumstances in each case." *Harris*, 2016 3948107, at *9 (citing *Elphage v. Gautreaux*, 969 F.Supp.2d 493, 515 (M.D. La. Sept. 3, 2013)); *see also Kyle*, 353 So. 2d at 972-73 ("A court must evaluate the officer's actions against those of ordinary, prudent, and reasonable men placed in the same position as the officers and with the same knowledge as the officer.").

Factors to consider include: "(1) the known character of the arrestee, (2) the risks and dangers faced by the officers, (3) the nature of the offense involved, (4) the chance of the arrestee's escape if the particular means are not employed, (5) the existence of alternative methods of arrest, (6) the physical size, strength, and weaponry of the officers compared to the arrestee, and (7) the exigencies of the moment." *Kyle,* 353 So.2d at 972.

---

[11] *See also Gerard v. Parish of Jefferson*, 424 So.2d 440, 444 (La. Ct. App. 1982) (*citing Kyle v. City of New Orleans*, 353 So.2d 969, 972 (La. 1977)); *see also Taylor v. United States*, 1991 WL 280066 (E.D. La. Dec. 19, 1991) ("Under Louisiana law, in the absence of the use of excessive force, a law enforcement officer cannot be held liable for assault and battery if the assault and battery occurred during a lawful arrest."); *see also Jones v. City of Shreveport*, CV 17-0298, 2018 WL 4088789, at *11 (W.D. La. Aug. 24, 2018) (citations omitted) ("[A]ssault and battery claims under Louisiana law involve similar elements to excessive force claims.").

Moreover, "Louisiana's excessive force tort mirrors its federal constitutional counterpart," and the *Kyle* factors for excessive force are "sufficiently similar" to the *Graham*[12] factors for excessive force. *See Deville v. Marcantel,* 567 F.3d 156, 172–73 (5th Cir. 2009). Thus, absent excessive force, Queen's FTCA tort claim for assault fails.[13]

### D.   The Government is not entitled to summary judgment as to whether BOP officials assaulted Queen in violation of BOP policy.

The Government's cross-motion in opposition seeks summary judgment as to all claims. ECF No. 75. The Government argues there is no genuine dispute that BOP employees complied with BOP policy and that Queen did not suffer the injuries alleged. *Id.* The Government's Statement of Undisputed Material Facts (ECF Nos. 77, 78) asserts the following facts are undisputed, relying on the administrative records and Queen's medical records (ECF Nos. 71, 78-1).

---

[12] *Graham v. Connor*, 490 U.S. 386, 396 (1989) (Factors to consider include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.").

[13] While there is ample caselaw addressing jurisdiction of these type of claims under the FTCA, there is a dearth of caselaw addressing the actual merits of an "assault" allegation made solely under the FTCA applying state law. The issue presents itself where, essentially, on what would commonly be alleged as a constitutional tort where federal sovereign immunity has not been waived under the FTCA, Queen artfully alleged FTCA claims for assault, which are actionable under the "law enforcement proviso."

Thus, while constitutional tort claims are not cognizable under the FTCA, a plaintiff may base his FTCA claim on a state law tort but cannot base it on a federal constitutional or statutory claim against the Government. *See Spotts v. United States*, 613 F.3d 559, 565, n.3 (5th Cir. 2010). Yet it becomes somewhat circular where, as here, Louisiana law on assault by a law enforcement officer requires essentially the same standard as a federal excessive force claim. And the Fifth Circuit has "not yet determined whether a constitutional violation, as opposed to a statutory, regulatory, or policy violation, precludes the application of the discretionary function exception." *Spotts*, 613 F.3d at 569.

10

BOP employees were called to Queen's cell in response to a medical emergency. ECF No. 78 at 1.  Queen appeared in duress, as he could not answer simple questions or state his name.  *Id.*  He was observed swaying back and forth and his breathing appeared to be labored.  *Id.* at 2.  Queen appeared to be under the influence of an unknown substance.  *Id.*  Coggins was speaking with Queen calmly to assess his condition.  *Id.*  Coggins asked Queen to stand from his bunk to be escorted to Health Services to be medically assessed.  *Id.*  Queen grabbed Coggins's right arm and stated he just needed a minute to breathe.  *Id.*  When Queen stood, he pushed Coggins in the chest and lunged toward other employees in his cell.  *Id.*  BOP employees described Queen as combative, assaultive, and aggressive.  *Id.*  BOP officials responded to Queen's actions by placing him on the ground with the least amount of force necessary to gain control of him.  *Id.*  Queen was then placed in hand restraints and escorted to Health Services to be medically assessed.  *Id.*

In relying on the administrative record, the Government refers to the written statements of BOP employees involved in the use of force incident and the restraint of Queen on January 3, 2019.  ECF No. 71-3 at 13-16, 21-23.  Noticeably absent from the record is the Disciplinary Hearing Officer's ("DHO's") Report regarding the January 3, 2019 incident where Queen's behavior allegedly required "use of force."

In his Affidavit (ECF No. 75-2 at 1), Coggins attests he was employed as an Activities Lieutenant at USP-Pollock on the date of the incident.  ECF No. 75-2 at 1. According to Coggins, on January 3, 2019 at approximately 2:37 p.m., staff observed Queen sitting in his cell, in housing unit A-4, swaying back and forth and his

breathing appeared to be labored. *Id.* A medical emergency was announced. *Id.* He arrived to Queen's cell and asked him to stand up from his bunk. *Id.* Queen stood up, pushed him in the chest, and lunged toward the other staff who were in his cell. *Id.* Queen was placed on the ground and secured in restraints. *Id.* Queen was escorted to Health Services and medically assessed with minor abrasions. *Id.* Queen was then placed in the SHU. *Id.*

The description in Incident Report (ECF No. 71-3 at 10) on record is consistent with the statements of BOP officials and Coggins's Affidavit. ECF Nos. 71-3 at 10, 64-1 at 1. The administrative record includes statements of BOP officials involved in the January 3, 2019 incident. ECF No. 71-3 at 9-23.

Lieutenant J. Cox ("Cox") issued a memorandum concerning the staff assault on January 3, 2019 by Queen. ECF No. 71-3 at 13. Cox stated that a medical emergency was called in the A-4 housing unit. *Id.* Queen was sitting in his cell and appeared to be in duress. *Id.* Cox stated the Activities Lieutenant (Coggins) ordered Queen to stand up so he could be escorted to Health Services to be medically assessed. *Id.* Cox stated that Queen then grabbed Coggins's right arm and stated "he just need a minute to breathe." *Id.* Once Queen stood up, he aggressively lunged towards responding staff in the cell and pushed Coggins in the chest, attempting to reach other staff within the cell. *Id.* Cox states Queen was then placed on the ground with the necessary amount of force needed to gain control of Queen combative behavior. *Id.* He was placed in restraints and escorted for medical assessment. *Id.*

Coggins's memorandum on the immediate use of force states that staff observed Queen sitting in his cell in Unit A-4 swaying back and forth, with labored breathing. ECF No. 71-3 at 14. A medical emergency was announced, and upon his arrival, Coggins asked Queen to stand up from his bunk. *Id.* Queen proceeded to stand from his bunk and push him in his chest and lung toward responding staff. *Id.* Coggins stated that due to Queen's assaultive actions, he was placed onto the ground and secured in restraints. *Id.* Queen was then escorted to Health Services and medically assessed with minor abrasions. *Id.*

Officer Keith stated that at 2:37, he responded to a medical emergency called in the A-4 unit. ECF No. 71-3 at 15. Upon arriving, he saw Queen seated in his chair, unable to answer simple questions, and slouched over slightly in his chair. *Id.* Officer Keith stated Queen seemed to be under the influence of an unknown substance. *Id.* He stated Coggins was speaking to Queen in a calm manner assessing his condition, and that Queen became combative and pushed Coggins. *Id.* He states Queen was placed on the ground with the least amount of force necessary to gain control of Queen's aggressive behavior directed at staff. *Id.* Queen was then placed in hand restraints. *Id.*

Officer T. Laborde noted he responded to a medical emergency in A-4. Upon arrival, he assisted Officer Keith and Coggins in restraining Queen. ECF No. 71-3 at 21. He applied hand restraints to Queen. *Id.*

In disputing the Government's assertions, Queen submits his own copy of the Incident Report (ECF No. 64-1 at 1) on which he handwrote "Found Not Guilty."

Queen argues that the memoranda by officials in his administrative record are "conclusory in fact" and that the Government fails to evidence that Queen was found guilty of assaulting officers.  ECF No. 82-1 at 3.

Referring to the allegations in his Complaint, Queen argues that BOP violated policy by using force without attempting to avoid doing so after all other reasonable efforts to resolve the situation failed.  ECF No. 82-1 at 3.  Queen argues the Government's claim that he committed an assault is "not plausible and conclusory in fact because [Officer Keith] has not sworn that Plaintiff was found guilty of assault through the prison disciplinary process of which is material to Plaintiff's claim under 552.20."  ECF No. 82-1 at 4.

Queen argues he went through the prison disciplinary process where he was charged with assaulting officers during the incident and was exonerated.  *Id.*  He asserts the Government was obligated to supply the completed file of the disciplinary hearing, as well as the segregated detention orders, but failed to do so.  ECF No. 82-1 at 4.  The record evidence, however, contains Queen's segregated detention order, pending the BOP investigation.  ECF No. 71-3 at 9.

According to Queen, because the Government failed to provide evidence that he was guilty of assaulting officers, the BOP's use of force was not justified, and the Government is not entitled to summary judgment.  *Id.*  He disputes the Government's assertion that immediate use of force was authorized.  ECF No. 82-1 at 5.  Queen asserts the Government fails to establish no genuine issue of material fact that BOP official violated § 552.27 by using force and restraints without videotaping.  ECF No.

82-1 at 7.  He claims the Government has failed to respond to his claim that the use of force was not videotaped.  *Id.*

Queen submits his own affidavit (ECF No. 86).[14]  He attests that Coggins and other unknown officers on January 3, 2019 "entered my cell and upon assaulting me found that I did not need emergency medical attention used force and restraints by hitting me in my face, pushing my head against the wall, dragged[sic] me across the floor, twisting my left arm behind my back, jumping on my back and my legs while I was on the floor, choked me, kicked me in the head and body, smashed my right arm against the ground underneath my body, put me in restraints, pulled my pants down and dragged me to medical without me having violated any institutional rules."  ECF No. 86 at 1.

Queen further attests that the actions of the officer violated BOP policy 5566.06, by using force against him without attempting other measures first; by using restraints against him; by using calculated force and restraints without securing him in his cell to determine if force was necessary; by using force against him without attempting to obtain his cooperation through staff; by using force without seeking mental or health care personnel's assistance first; and by using force without reviewing his medical files first, without being able to detail the incident "vividly" and without having videotaped the use of force.  *Id.* at 1-2.  Queen attests that Coggins

---

[14] Yet it is well settled that "a self-serving affidavit, without more evidence, will not defeat summary judgment."  *Ray v. Geo Grp., Inc.*, 547 Fed.Appx. 443, 446 (5th Cir. 2013) (quoting *Sanchez v. Dall./Fort Worth Int'l Airport Bd.,* 438 Fed.Appx. 343, 346–7 (5th Cir. 2011)).  Here, however, Queen submitted DOJ correspondence at least arguably supporting his affidavit.  ECF No. 91-1.

states in the Incident Report that he saw Queen sitting on a chair upon his arrival, but that Coggins attests in his Affidavit that Queen was sitting on a bunk.  ECF No. 86 at 2.  Queen further attests that he was "exonerated" of Coggins's allegation in the infraction for assaulting him.  *Id.*

Supporting this assertion, Queen submits correspondence from DOJ concerning his complete disciplinary record of the January 3, 2019 incident report. ECF No. 91-1 at 1.  The evidence reflects that the Incident Report related to the January 3, 2019 incident was expunged.  *Id.*  In the correspondence, Complex Warden C. McConnell ("McConnell") states that, under P.S. 5270.09, when DHO expunges an incident report, unit staff must ensure the inmate's central file does not include the incident report and related documents.[15]  *Id.*  McConnell went on to state that no written approval was conducted to maintain the expunged incident report in Queen's central file, and that none of the related materials were maintained.  *Id.*

No reply was filed by the Government to address Queen's evidence of expungement.  Queen's FTCA assault claim arises from the same set of fact on which the alleged disciplinary conviction was based.  In short, it is unclear why it was expunged.

The Court does not have the benefit of reviewing evidence of the DHO hearing or findings, if any, concerning Queen's alleged conduct.  Overall, it does not appear the record evidence reflects the complete record concerning the incident.

---

[15] References to 100 or 200 severity level offenses not supported by disciplinary action in the inmate's central file may only be retained with the Warden's written approval.  *Id.*

A genuine issue of material fact remains as to whether Queen was guilty of assault against BOP officers on January 3, 2019. Thus, there also remains a genuine issue of material fact as to whether his conduct necessitated immediate use of force. The Government's motion should be denied in part as to whether BOP employees complied with BOP policy concerning the use of force against Queen.

### E. The Government is entitled to summary judgment on the basis that there is no genuine issue of material fact that Queen's alleged injuries are no more than *de minimis*.

The Government submits that critical undisputed facts may be drawn from Queen's sealed medical records.[16] ECF No. 78.

Queen has an extensive medical history at USP-Pollock after the incident. *Id.* at 2. On January 3, 2019, however, Queen reported only right shoulder pain, and was assessed by USP-Pollock medical personnel with only a "minor injury." *Id.; see also* ECF No. 71-2 at 172. Queen's records reflect regular treatment of high blood pressure and other illnesses. ECF No. 71-2 at 2. He never again complained of, or received treatment for, right shoulder pain after the day of the incident. *Id.*

Queen made one complaint of left shoulder pain four months after the incident. *Id.* at 3; *see also* ECF No. 71-2 at 160. Exam revealed full range of motion without deformity or atrophy. *Id.* No other mention was made of left shoulder pain. *Id.*

He began complaining of back and right knee pain on June 26, 2020, 17 months after the incident. ECF Nos. 78 at 3, 71-2 at 21-22. On July 21, 2020, Queen reported back and knee pain related to the incident. ECF Nos. 78 at 3, 71-2 at 7-19. Objective

---

[16] Queen does not controvert these facts. Thus, the facts are deemed admitted. *See* Local rule 56.2W (formerly 2.10W).

imaging studies performed on the right knee showed "unremarkable" soft tissues and "no fracture or malignment," but supported a finding of possible arthritis. ECF Nos. 78 at 3, 71-2 at 114. Objective imaging of Queen's right hip showed his soft tissues were "unremarkable" and showed "no fracture or malignment." ECF Nos. 78 at 3, 71-2 at 112.

The right hip pain complaints and imaging study occurred 18 months after the incident. ECF No. 78 at 3. Queen had not complained of, or received treatment for, right hip pain during the eighteen months following the incident. *Id.* There is no record of right arm pain mentioned post-incident. *Id.*

Section 1997e(e) requires a showing of "physical injury" that is more than *de minimis*, although it need not be significant. *See Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (citing *Siglar v. Hightower*, 112 F.3d 191 (5th Cir. 1997)). The FTCA mirrors this requirement under 28 U.S.C. § 1346(b)(2) (requiring a showing of "physical injury"). Although the FTCA does not define what is meant by "physical injury," caselaw interpreting § 1997e's requirement does. Section 1997e applies to any action with respect to prison conditions under § 1983, *or any other Federal* law, by a prisoner. 42 U.S.C. § 1997e(a) (emphasis added).

The Fifth Circuit has clearly stated that "Louisiana's excessive force tort mirrors its federal constitutional counterpart." *Elphage*, 969 F.Supp.2d at 515 (citing *Deville v. Mercantel*, 567 F.3d 156, 172-173 (5th Cir. 2009). And while the Fifth Circuit no longer requires significant injury for excessive force claims, the injury must still be more than *de minimis*. *See Westfall v. Luna*, 903 F.3d 534, 549 (5th Cir. 2018)

("Westfall's . . . abrasions and bruises, bloody urine, and high blood pressure and heart rate, which may have been caused by Trevino's actions, are, based on our case law, *de minimis*."); *see also Brooks v. City of W. Point, Miss.*, 639 Fed.Appx. 986, 990 (5th Cir. 2016) (finding that pain in an arrestee's back and neck was *de minimis*).

A more than *de minimis* physical injury, as defined by § 1997e(e) and the jurisprudence, " . . . is an observable or diagnosable medical condition requiring treatment by a medical care professional.  It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks.  People in the regular and ordinary events and activities in their daily lives do not seek medical care for the injuries they receive unless it obviously appears to be of a serious nature, or persists after home remedy care." *English v. Winn Corr.*, 1:12-CV-2819, 2013 WL 1574967, at *2 (W.D. La. Feb. 22, 2013), *report and recommendation adopted*, 1:12-CV-2819, 2013 WL 1574419 (W.D. La. Apr. 12, 2013), *aff'd sub nom. English v. Winn Corr. Ctr.*, 548 Fed.Appx. 287 (5th Cir. 2013).

Queen argues the Government fails to establish he did not suffer injuries resulting from the use of force and restraints.  He claims the Government failed to cite to a particular part of the record  showing Queen was not injured. ECF No. 82-1 at 8.

Queen attests he suffered physical injuries to his neck and face because of the use of force.  ECF No. 86 at 2.  Queen's original FTCA administrative claim does not state what personal injuries he suffered.  ECF No. 9-1 at 1.  But he supplemented his

FTCA administrative claim to allege injuries to his lower back, right hip, right arm, both shoulders, and right leg. ECF No. 9-1 at 9-10.

He also attaches a February 23, 2021 Medical Report Form (ECF No. 64-1 at 2) from the Baltimore Department of Social Services[17] in support of his claim of pain, suffering, physical injuries, and emotional distress. ECF No. 64 at 2. The form states Queen shows a diagnosis of chronic low back pain, hypertension, and right hip pain. ECF No. 64-1 at 2. In a questionnaire format, it reflects Dr. Romero's assessment that Queen suffers from a "physical/mental/emotional impairment," which is severe enough to prevent him from working, participating in work, training, or education activity. *Id.* Dr. Romero noted Queen's impairment is expected to last from March 15, 2021 to March 15, 2022. ECF No. 64-1 at 3.

By contrast, Queen's medical records show that following the incident, he was escorted to Health Services, given a medical assessment, and was not significantly injured. ECF No. 71-3 at 27-29. Queen was assessed for right shoulder pain. ECF No. 71-3 at 28. Queen reported his symptoms as "I got scars on me." *Id.* His vital signs were stable. His speech was erratic. *Id.* He was noted to be speaking incoherently, his pupils were dilated, and he was unresponsive to questioning. *Id.*

Examination of Queen noted abrasions to the right side of his neck and right pectoral, but no other bruising, swelling, or deformity. *Id.* He was assessed with "minor injury." *Id.* Queen received patient education on the date of the incident on

---

[17] It appears Queen received an assessment through "Health Care for the Homeless" in Baltimore, Maryland after his release from prison, in determining his eligibility for Maryland's Temporary Disability Assistance Program ("TDAP"). ECF No. 64-1 at 2-3.

not ingesting unknown substances and injury prevention. *Id.* The nurse practitioner followed up, noting that Queen was "smiling and swaying stating 'I don't know what happen; they just came and got me.'" *Id.* On exam, Queen appeared to be under the influence of an illicit substance. *Id.* The nurse practitioner agreed with the nurse's assessment and impression. *Id.* at 27.

On July 29, 2020, Queen was treated for complaints of right-sided lower back pain and right knee pain. He claimed the pain was linked to his alleged assault in January 2019. ECF No. 71-2 at 7. Exam revealed limited lower back extension due to pain; tender to palpation at the spinal process of T12/L1; no palpable muscle spasms; no tenderness at both SI joints; negative straight leg tests bilaterally; and a negative "Figure 4" test on the left, positive on the right. *Id.* at 8. Exam of the right knee showed no apprehension; crepitus to palpation with active and passive flexion/extension; no sign of a meniscal tear; and negative anterior drawer. *Id.*

Queen was assessed with hypertension, obesity, low back pain, and leg pain, and he was prescribed hypertension medication. *Id.* He demanded hip and knee braces. *Id.* at 9. The provider noted that he discussed at length that hip and knee braces were not medically indicated for Queen. *Id.* Right hip and right knee radiographs showed no fracture or malalignment. *Id.* The right hip radiograph showed pincer-type morphology of the right hip that can result in impingement and moderate right hip osteoarthritic changes. *Id.* Right knee radiographs showed tiny early degenerative spurring of the superior patellar articulation. *Id.* Queen was counseled on losing weight, diet, and increasing daily physical activity. *Id.*

Based on the undisputed medical record evidence, Queen had a red mark along the right side of his neck and right pectoral following the incident.  ECF No. 71-3 at 11.  No bruising, swelling, or deformity was noted.  As providers noted, at most, his medical records reflect "minor injury."  ECF No. 71-3 at 7, 27, 28; *see also* ECF No. 71-2 at 172.

Queen fails to present viable evidence demonstrating his injury was anything more than *de minimis*.  Queen's affidavit is contradicted by the objective medical evidence, which shows degenerative conditions and mild abrasions.  It is also self-serving and therefore inadequate to warrant summary judgment.

The Court finds that the medical record evidence, even viewed in a light most favorable to Queen, fails to show more than a *de mimimis* injury.  *See Westfall*, 903 F.3d at 549; *see also Brooks*, 639 Fed.Appx. at 990.   On that basis, the Government is entitled to judgment as a matter of law on Queen's remaining FTCA assault claim.

## III.  <u>Conclusion</u>

For these reasons:

Queen's Motion for Summary Judgment (ECF No. 64) should be DENIED WITHOUT PREJUDICE.

The Government's Motion for Summary Judgment (ECF No. 75) should be GRANTED IN PART and DENIED IN PART.  Because the Government failed to establish no genuine issue of material fact as to whether Queen was guilty of assault against BOP officers on January 3, 2019, and as to whether his conduct necessitated immediate use of force, the Government's motion (ECF No. 75) should be DENIED

IN PART as to whether BOP employees complied with BOP policy concerning the use of force against Queen. However, because Queen's alleged injuries are at most *de minimis*, the Government's motion (ECF No. 75) should be GRANTED IN PART on that basis, and Queen's sole remaining claim should be DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), any party may serve and file with the Clerk of Court written objections to this Report and Recommendation within fourteen (14) days after being served with a copy thereof, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections or reply briefs) may be filed, unless a party shows good cause and obtains leave of court. The District Judge will consider timely objections before issuing a final ruling.

A party's failure to file written objections to the proposed factual findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days after being served with a copy thereof, or within any extension of time granted by the Court under Fed. R. Civ. P. 6(b), shall bar that party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in Alexandria, Louisiana, on this 24th day of March 2022.

_____
JOSEPH H.L. PEREZ-MONTES

UNITED STATES MAGISTRATE JUDGE